# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | BLANCHE M. MANNING | Sitting Judge if Other than Assigned Judge | JAMES F. HOLDERMAN |
|---|---|---|---|
| **CASE NUMBER** | 01 C 802 | **DATE** | March 18, 2004 |
| **CASE TITLE** | | Berrum v. Freyberger | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The court grants defendant Douglas Freyberger's motion for summary judgment [31] and denies plaintiff Jose Berrum's motion for summary judgment [45]. The Clerk is directed to enter judgment in favor of defendant Douglas Freyberger and against plaintiff Jose Berrum pursuant to Fed. R. Civ. P. 56.

(11) ■ [For further detail see attached Memorandum Opinion and Order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAR 19 2004 date docketed | 49 |
| X | Docketing to mail notices. | | | |
| X | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | IS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | CLH | courtroom deputy's initials | 2004 MAR 19 AM 8:12 | date mailed notice |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JOSE BERRUM,

    Plaintiff,

v.      No. 01 C 802

DOUG FREYBERGER, Individually
    and In His Official Capacity
    as a DEA Special Agent; and
    Other Unknown DEA Special Agents,
    Individually and In Their Official
    Capacity as DEA Special Agents.

    Defendants.

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Jose Berrum (Berrum), currently an inmate at FCI Texarkana, Texas, brings this *pro se* complaint under the Constitution ("Bivens" Action), 28 U.S.C. §1331(a) and the International Covenant on Civil and Political Rights (ICCPR). On March 19, 2002, the court granted in part and denied in part defendant Douglas Freyberger's Motion to Dismiss. Berrum's claims pursuant to the Fifth and Sixth amendments and under the ICCPR were dismissed. Berrum's claims that his arrest and the search of his residences were in violation of the Fourth Amendment and that Freyberger used excessive force in violation of the Eighth Amendment remain. Freyberger has filed a motion for summary judgment. In response, Berrum filed a cross-motion for summary judgment. For the following reasons, the court grants defendant Douglas Freyberger's motion for summary judgment and denies plaintiff Jose Berrum's motion for summary judgment.

1



## I. Standard of Review on a Motion for Summary Judgment

*Borcky v. Maytag Corporation*, 248 F.3d 691, 695 (7th Cir. 2001), details the criteria a district court must follow in ruling on a motion for summary judgment:

> [A district court] "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> However, "[t]he mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment," *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 796 (7th Cir. 1999); only a "genuine" issue of "material" fact precludes summary judgment, Fed. R. Civ. P. 56(c). "Factual disputes are 'material' only when they 'might affect the outcome of the suit under the governing law.'" *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, "[f]actual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [nonmovant].'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505). Speculation will not suffice. *See Liu*, 191 F.3d at 796 ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion."); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001); *Gorbitz v. Corvilla, Inc.*, 196 F.3d 879, 882 (7th Cir. 1999) (stating that a plaintiff's speculation is "not a sufficient defense to a summary judgment motion").

The party moving for summary judgment has the initial burden of submitting affidavits and other evidentiary material to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 325. Once the moving party has sustained the initial burden, the opposing party may not rest upon the mere allegations or denials of the pleadings, but instead must come forward with specific evidence, by affidavits or as otherwise provided in Rule 56, showing that there is a genuine issue for trial. *Id.* at 324.

Because both parties have moved for summary judgment, the court evaluates each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir. 1987). However, this does not necessarily mean the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. *Id.*

## II. Facts

### A. Freyberger's Local Rule 57.1 Statement of Uncontested Facts

On June 11, 1999, Berrum owned three residences: one on Commercial Avenue in South Chicago Heights, Illinois; one on Helfred Avenue in South Chicago Heights, Illinois; and one on Crystal Court in Steger, Illinois. Exhibit B at 8; Exhibit D at 4-5. Berrum lived with his wife and children in the house on Helfred Avenue. Exhibit B at 8; Exhibit D at 4-5.

On June 11, 1999, Berrum took personal delivery and possession of approximately 14.7 kilograms of cocaine at his residence on Commercial Avenue. Exhibit C at 2. He then received into his residence an undercover government agent who by prior arrangements had agreed to purchase cocaine from Berrum at Berrum's stated price of $25,000 per delivered kilogram. Exhibit C at 2-3. Berrum directed the agent into the kitchen and adjacent dining room and personally displayed part of the 14.7 kilograms of cocaine. *Id.*

At the same time, Freyberger was in a car parked on a side street near the Commercial Avenue residence. Exhibit A at ¶ 2. Freyberger heard over the radio that the undercover agent had given the prearranged "bust" signal. Exhibit A at ¶ 2. Freyberger then drove down the alley, parked near the rear of the residence, and entered the residence through the side door. Exhibit A at ¶ 2.

When Freyberger entered the residence, the arrest team, which was composed of officers from the DEA and the Chicago Heights Police Department, was outside the kitchen. Exhibit A at ¶ 3. Berrum was already handcuffed and lying on the floor. Exhibit A at ¶ 3. Freyberger then saw members of the arrest team help Berrum to his feet, assist him to a chair, and remove his handcuffs. Exhibit A at ¶ 3.

Freyberger asked whether Berrum spoke English and was told by Detective James Martinez of the Chicago Heights Police Department, whom Freyberger believes to be fluent in Spanish, that Berrum did not speak English. Exhibit A at ¶ 4; *see also* Exhibit B at 4, 17. Freyberger neither speaks nor reads Spanish. Exhibit A at ¶ 4.

3

Freyberger asked whether Berrum had been advised of his rights, and a member of the arrest team told him that Berrum had been advised of his rights. Exhibit A at ¶ 5.

Freyberger gave Martinez three blank DEA forms in Spanish and asked Martinez to read them to Berrum and ask Berrum if he would consent to a search of his three residences. Exhibit A at ¶ 6.

Freyberger obtained the DEA forms from a file folder in the DEA office labeled "Consent to Search (Spanish)." Exhibit A at ¶7. These DEA forms were entitled *"Consentimiento de Registro"* and contained the designation "DEA Form-88." Exhibit A at ¶ 7. Although Freyberger does not speak or read Spanish, he believes that the blank forms he gave Martinez were Spanish-language versions of the DEA's "Consent to Search" forms, which also contain the designation DEA Form-ii, and which state that (1) the signer has been asked to permit special agents of the DEA to search a specifically designated person, place, or thing; (2) the signer has not been threatened, nor forced in any way; and (3) the signer freely consents to the search. Exhibit A at ¶ 7; Exhibit F.

Freyberger then watched Martinez speak to Berrum in Spanish. Exhibit A at ¶ 8. Berrum appeared to Freyberger to be calm, coherent, and cooperative. Exhibit A at ¶ 8. Freyberger then left the dining room and went to the front yard of the Commercial Avenue residence, where two additional suspects were being questioned. Exhibit A at ¶ 8.

A few minutes later, Freyberger returned to the dining room where Berrum still appeared to be calm, coherent, and cooperative. Exhibit A at ¶ 9. Martinez told Freyberger that Berrum had consented to have the DEA search his three residences, and Martinez gave Freyberger the three DEA forms, each of which specified one of Berrum's residences, each of which was signed by Berrum, and each of which was signed by Martinez. Exhibit A at ¶ 9; Exhibits G., H, I. Freyberger then signed each of the three forms for evidentiary chain-of-custody purposes. Exhibit A at ¶ 9. Less than five minutes passed between the time that Freyberger handed the blank DEA forms to Martinez and the time that Martinez handed the signed DEA forms to

Freyberger. Exhibit A at ¶ 9.

Freyberger then walked through the Commercial Avenue residence, where he saw a suitcase containing cocaine, a scale, a semi-automatic handgun, and live ammunition. Exhibit A at ¶ 10.

Berrum admits that the search of his Commercial Avenue residence was consensual. Exhibit C at 3; Exhibit J at II; Exhibit K at 5-6.

While Freyberger was in the Commercial Avenue residence with Berrum, he did not speak directly to Berrum, he did not touch Berrum, and he saw no one strike or in any way threaten Berrum. Exhibit A at ¶ 11.

Berrum was then taken to the Helfred Avenue residence. Exhibit B at 21. Berrum remained outside while the officers searched that residence. Exhibit B at 21; Exhibit D at 11. Freyberger did not participate in the search of the Helfred Avenue residence. Exhibit A at ¶ 12.

Berrum was then taken to the Crystal Court Residence. Exhibit B at 21. Freyberger participated in the search of the Crystal Court residence. Exhibit A t ¶ 13. When Freyberger entered the Crystal Court residence, he believed that Berrum voluntarily had consented to the search of that residence. *Id.*

During the search of the Crystal Court residence, Berrum showed Freyberger and Martinez the basement ceiling panel above which $10,000 in currency was hidden. Exhibit A at ¶ 14. The only other contraband Freyberger saw was a semi-automatic handgun and live ammunition. Exhibit A at ¶ 14. During the search of the Crystal Court residence, Berrum appeared to Freyberger to be calm, coherent, and cooperative. Exhibit A at ¶ 14.

Berrum was taken to the Chicago Heights Police Department. Exhibit B at 48. Freyberger saw Berrum briefly at the Chicago Heights Police Department. Exhibit A at ¶ 15. He did not speak to or touch Berrum, and he saw no one strike or in any way threaten Berrum. Exhibit A at ¶ 15.

Berrum pled guilty to possession with intent to distribute cocaine, and he was sentenced

5

to 66 months in prison. Exhibit E.

In his deposition, Berrum testified that he was slapped on the head two times by one officer while sitting in the dining room at the Commercial Avenue residence and slapped in the face two times by the same officer at the Chicago Heights Police Department. Exhibit B at 15-16, 18. Berrum testified that he did not remember who hit him and did not know the name of the person who hit him. Exhibit B at 13-14. Berrum testified that the person who hit him had black hair. Exhibit B at 14. Berrum stated several times that the person who hit him appeared with him when he appeared before the magistrate judge for the first time. Exhibit B at 14-15, 18-19, 24. Berrum also testified that he did not see the person who hit him during the search of the Crystal Court residence. Exhibit B at 22.

Freyberger has blonde hair and had blonde hair on June 11, 1999. Exhibit A at ¶ 16.

Freyberger never appeared before a magistrate judge in connection with Berrum's criminal case. Exhibit A at ¶ 17.

**B. Berrum's Local Rule 56.1 Statement of Uncontested Facts**

The parties do not disagree as to the first five paragraphs of Berrum's statement. Berrum then continues that on June 11, 1999, he was struck two times by DEA agents in order to force him to consent to a search of his three residences. Berrum's signing of the consent forms was involuntary because of the assault, threat, and intimidation.

On June 11, 1999, when DEA agents searched the Helfred residence, they pushed Berrum's minor son into the door when he answered their knock. The agents rushed to the bathroom where Berrum's wife was showering, entered the bathroom and snatched open the shower curtains. This caused Berrum's wife to fall backward, hitting her neck and the back of her head. After she regained consciousness, the agents taunted and ridiculed her and refused to give her any assistance.

Berrum disagrees with Freyberger's statement that Freyberger entered the Commercial Avenue residence after Berrum was handcuffed and lying on the floor. Rather, Berrum states

6

that Freyberger was the first person he saw when the DEA agents entered his residence.

Berrum disagrees with Freyberger's statement that he did not participate in the search of the Helfred Avenue residence. Berrum disagrees with Freyberger's statement that he never appeared before a magistrate judge in connection with Berrum's criminal case. Berrum states that Freyberger was present at a hearing on June 12, 1999, and asked the magistrate judge to deny bond.

Berrum states that he was struck two times while at the Chicago Heights Police Department. Berrum states that the DEA agent who struck him was at the hearing on June 12, 1999.

### III. Analysis

When Freyberger filed his motion for summary judgment, he included a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment" as required by *Timms v. Frank*, 953 F.2d 281, 285 (7th Cir. 1992); *Lewis v. Faulkner*, 689 F.2d 100, 102 (7th Cir. 1982). This notice clearly sets out the requirements of this court's Local Rule 56.1. In particular, the notice explains:

> You may rely upon your own declaration or the declarations of other witnesses. A declaration is a signed statement by a witness. The declaration must end with the following phrase: "I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct," and must be dated. If you do not provide the Court with evidence that shows that there is a dispute about the facts, the judge will be required to assume that the defendant's factual contentions are true, and, if the defendant is also correct about the law, your case will be dismissed.

Berrum responded with a memorandum in support of plaintiff's motion for summary judgment. However, he did not file a motion for summary judgment. When Berrum moved to reinstate his motion for summary judgment, the court examined the record and saw that he had never filed a motion for summary judgment but had filed a memorandum. After reviewing this memorandum the court determined that it would be futile to allow plaintiff to file a motion for summary judgment based on this memorandum. In its order of December 8, 2003, the court explained:

> The memorandum does not comply with Rule 56(e) of the Federal Rules of Civil

7

> Procedure or with this court's Local Rule 56.1. To support his memorandum, plaintiff has attached copies of his wife's medical bill and records. However, this court informed plaintiff in its April 18, 2001, order that he could not bring claims on behalf of his wife. He has also included a list of his psychological contacts, but that is all it is–a list. However, because plaintiff is pro se, the court will give him one final opportunity to respond to defendant's motion for summary judgment.

The court then gave Berrum a "Notice to Pro Se Litigant Opposing Motion for Summary Judgment."

Berrum responded with a motion for summary judgment, his Local Rule 56.1 Statement of Uncontested Facts, and a Memorandum in Support of Plaintiff's Motion for Summary Judgment. In spite of the court's notice that his exhibits were not sufficient, he attached the same ones. Moreover, in spite of the Assistant United States Attorney's explicit explanation of how to make a declaration, Berrum has not declared under penalty of perjury that his filings, in particular, his Local Rule 56.1 Statement of Uncontested Facts, are true and correct.

Although pro se plaintiffs are entitled to lenient standards, compliance with procedural rules is required. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir.1994). Despite being provided twice with the Local 56.1 notice to pro se litigants opposing summary judgment, Berrum has failed to support his motion with summary judgment. Moreover, neither his Local Rule 56.1 Statement of Uncontested Facts nor his motion for summary judgment can be deemed a declaration or affidavit for they are not sworn under penalty of perjury. 28 U.S.C. § 1746; *Eddings v. Lefevour*, No. 98 C 7968, 2000 WL 146610, at *7 (N.D.Ill. Sept. 29, 2000). Accordingly, Freyberger's Rule 56.1 facts are deemed admitted. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 870 n. 3 (7th Cir. 2000). *Oates v. Discovery Zone*, 116 F.3d 1161, 1167 (7th Cir. 1997); *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994); L.R. 56.1(b)(2)(B).

Nonetheless, because Berrum is pro se , the court will examine both motions for summary judgment in regard to the two remaining claims of use of excessive force and involuntary consent to search.

**A. Use of Excessive Force**

In his motion for summary judgment Freyberger states that when he entered the Commercial Avenue residence, Berrum was already handcuffed and lying on the floor. Exhibit A at ¶ 3. Freyberger states he did not touch Berrum and saw no one strike or in any way threaten Berrum while at the Commercial Avenue residence. Exhibit A at ¶11. Freyberger states that while at the Chicago Heights Police Department, he did not speak to or touch Berrum and saw no one else strike or in any way threaten Berrum. Exhibit A at ¶ 15. Freyberger states that he has blonde hair and had blonde hair on June 11, 1999. Exhibit A at ¶ 16. Freyberger states that he never appeared before a magistrate judge in connection with Berrum's criminal case. Exhibit A at ¶ 17.

In his motion for summary judgment, Berrum states that he was struck two times by DEA agents in order to force him to consent to a search of his residences. However, he does not identify Freyberger as one of the agents who struck him. Berrum states that the agent who struck him at the Chicago Heights Police Department was also at the hearing on June 12, 1999. Berrum states that Freyberger was present at this hearing.

None of Berrum's statements is supported by the record. Moreover, in his deposition, Berrum stated that he did not remember who hit him but that this person had black hair. Exhibit B at 13-14. Even assuming that Berrum was struck both at his residence on Commercial Avenue and at the Chicago Heights Police Department--assumptions that are not supported in any way by the record before this court--it is clear that it was not Freyberger who struck him and that Freyberger was not present when these alleged strikes took place.

The court accordingly grants Freyberger's motion for summary judgment in regard to the claim of excessive force and denies Berrum's motion for summary judgment in regard to this claim.

## B. Involuntary Consent to Search

In his motion for summary judgment, Freyberger details the steps he took in having Berrum sign the consent-to-search forms. Each statement is supported by the record. The

exhibits, affidavits, and the like demonstrate that Berrum's consent was voluntary.

Berrum alleges that he consented only after he was assaulted and that he feared further assaults. However, Berrum has offered nothing to support his version of the events other than his own assertions.

Freyberger has also offered into evidence a copy of the brief that Berrum filed in support of his motion pursuant to Rule 21 section 881 for "return of property" in *United States v. Berrum*, 99 CR 432-1. Exhibit J. In the brief, Berrum wrote: "Incident to his arrest, law enforcement officers conducted a consensual search of Berrum's residence." *Id.* at II. Berrum signed the brief. *Id.* at 9. Berrum argues that this statement is because the brief was prepared by another inmate. However, Berrum is responsible for briefs and the like that he files in court. Interestingly, the motion for return of property was filed on September 19, 2000, after Berrum filed the instant complaint claiming that the search was illegal.

The court accordingly grants Freyberger's motion for summary judgment and denies Berrum's motion for summary judgment on Berrum's claim that his consent to the search was not voluntary.

## IV. Conclusion

For the foregoing reasons, the court grants defendant Douglas Freyberger's motion for summary judgment and denies plaintiff Jose Berrum's motion for summary judgment. The Clerk is directed to enter judgment in favor of defendant Douglas Freyberger and against plaintiff Jose Berrum pursuant to Fed. R. Civ. P. 56.

If Berrum wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Rule 4(a)(4), Fed. R. App .P. If he does so, he will be liable for the $255 appellate filing fee. Unless he is granted leave to proceed *in forma pauperis*, he will have to pay the fee immediately. If he cannot do so, the appeal will be dismissed, but he will remain liable for the fee and it will be deducted from his inmate trust fund account in installments. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). If this

court finds that appeal is not taken in good faith, and the Court of Appeals agrees, he will not be permitted to proceed *in forma pauperis* and pay the fee in installments, but will have to pay the fee immediately or the appeal will be dismissed. 28 U.S.C. § 1915(a)(3). To avoid a finding that the appeal is not taken in good faith, a motion to proceed *in forma pauperis* on appeal should explain the grounds for the appeal. *See Hyche v. Christensen*, 170 F.3d 769, 771 (7th Cir. 1999); Fed. R. App. P. 24(a)(1)(C).

ENTER:

JAMES F. HOLDERMAN
United States District Judge

Dated: March 18, 2004